UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

MYRON GLENN,

        Plaintiff,                        Case No. 1:19-cv-803

v.                                            Honorable Janet T. Neff

TANYA LAMP,

        Defendant.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Eighth Amendment and due process claims.

## **Discussion**

### I.      **Factual Allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Lakeland Correctional

Facility (LCF) in Coldwater, Branch County, Michigan.[1]  Plaintiff sues LCF Food Service Supervisor Tanya Lamp.

Plaintiff worked as an LCF food service worker from April 13, 2016, through November 8, 2016.  During his first week of employment, Plaintiff asked Defendant Lamp to not scream at him or call him derogatory names.  Lamp advised Plaintiff that she would do what she wanted, saying, "Start acting like a man and I will treat you like one; I cannot stand crybabies." (Compl., ECF No. 1, PageID.3.)  Defendant Lamp continued to make disparaging remarks, despite Plaintiff's repeated requests to stop.

Plaintiff eventually spoke to Food Service Director Torrey, a lieutenant, a sergeant, and the warden, complaining that Lamp had repeatedly passed over him for lead food service positions, despite his superior skill, seniority, and good work reports.  Torrey told Plaintiff that Lamp had worked in food service longer than Torrey and that Torrey therefore allowed her to make decisions on inmate promotions.  Torrey advised Plaintiff not to be bothered by the way Lamp talked, as she was just making sure that male employees took her seriously.

In mid-July 2016, Defendant Lamp approached Plaintiff, saying "You really don[']t know who you are f\*\*king with, but you are going to find out the hard way.  I run this kitch[e]n, not Torrey or anybody else you have been crying to." (*Id.*, PageID.4.)  On August 15, 2016, Defendant Lamp issued a false work evaluation on Plaintiff and requested that the classification director terminate Plaintiff from his job, ostensibly because he had missed three unexcused work shifts.  Plaintiff was then terminated.  On August 24, 2016, Plaintiff wrote the classification director, claiming that he had not missed three days of unexcused work, because he had told her he had medical issues on two days and she had refused to allow him to work on the third day.  On

---

[1] Plaintiff lists his prior place of confinement as the "Coldwater Correctional Facility."  The address he provides, however, is that of the Lakeland Correctional Facility in Coldwater, Michigan.

August 31, 2016, the classification director informed Plaintiff that he could return to work, once he was cleared by medical.

On October 10, 2016, a few days after receiving medical clearance, Defendant Lamp accused him of over-scooping servings. However, Food Steward Goodman told the corrections officer on duty that Plaintiff only over-scooped a few times at the beginning and, once instructed, he did a good job. Plaintiff filed a grievance against Defendant Lamp on October 11, 2016. He completed the grievance process at Step III on March 28, 2017.

Plaintiff finally was promoted to a lead job on October 30, 2016. On the first day, he thanked Defendant Lamp for the promotion and expressed his hope that their differences were now resolved. Lamp responded, "Trust me I am not the one you need to be thanking. You can thank me when your crybaby snitching a** is fired for good. Trust me it will be soon." (*Id.*, PageID.6.) Plaintiff asked if she would give him a clean slate if he signed off on his grievance and promised to defer only to her in matters relating to food service. She answered, "No, you can ask all the guys, once an inmate decides to front me off by writing grievances and going over my head for petty sh*t I consider him a rat and he ain[']t got nothing coming from me. . . . What you need to do is sign off of your foodservice detail before it[']s something worse than that." (*Id.*) According to Plaintiff, in late September 2016, a prisoner overheard Defendant Lamp make multiple similar comments to Food Service Supervisor Covey, indicating her intent to find another way to fire Plaintiff for succeeding in overturning her recommendation to fire him.

On December 6, 2016, Defendant Lamp approached Plaintiff and asked where he had been. Plaintiff responded that he had been in the restroom. Defendant demanded that Plaintiff leave work, since he was sick, despite Plaintiff saying he was not sick, but just using the restroom.

3

Plaintiff told Defendant Lamp that he would be filing another grievance. She responded, "[W]e will see what that gets you." (*Id.*, PageID.7.)

Plaintiff spoke to Lieutenant Nogueros on December 7, 2016, about Defendant Lamp's continuing harassment and threats. He filed a grievance that same day and pursued it through Step III. On December 9, 2016, Defendant Lamp pulled a large bag of vegetables out of the toaster on the opposite side of the food service area from where Plaintiff was working. She then came up to Plaintiff and ordered him to punch out for stealing. When Plaintiff responded that he did not steal anything, Lamp stated. "Who do you think the[y]'re going to believe, me or you? . . . Be happy is was[n']t worse than this because you really have pissed me off." (*Id.*) The following day, Defendant Lamp wrote a false Class-II misconduct ticket against Plaintiff, alleging that she saw Plaintiff remove something from the crotch of his pants and shove it down the toaster. When she looked she found a bread bag filled with four peppers, three onions, and four tomatoes. Defendant Lamp claimed that Plaintiff had stolen the items.

Plaintiff was heard on the grievance on December 17, 2016. Plaintiff claimed he was innocent, asked to have a review of the camera footage, and asked to have the hearing officer interview Lt. Nogueros about Defendant Lamp's ongoing threats to get Plaintiff removed from his job. Plaintiff also asked the hearing officer to interview another inmate, a lead line worker on the side where the toaster was located, who would testify that he told Defendant Lamp that the vegetables were in the toaster as least 15 minutes before the time Lamp accused Plaintiff. The hearing officer refused all threats and found Plaintiff guilty of theft. Plaintiff appealed the misconduct conviction.

Plaintiff alleges that he was denied due process in the misconduct proceedings. He also contends that Defendant Lamb's actions were taken in retaliation for Plaintiff's exercise of

his First Amendment right to make complaints and file grievances. Finally, Plaintiff arguably suggests, though he does not state, that Defendant Lamp's months-long harassment violated his rights under the Eighth Amendment.

Plaintiff seeks declaratory relief and compensatory damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

5

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

Plaintiff implies that Defendant Lamp violated his Eighth Amendment rights by verbally harassing and abusing him. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at

954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Lamp arising from his alleged verbal abuse.

B. Due Process

Plaintiff complains that the issuance and handling of the false misconduct charge violated his right to due process under the Fourteenth Amendment. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under Michigan

7

Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *See* Policy Directive 03.03.105, ¶ AAAA. Therefore, Plaintiff could not have been denied good time or disciplinary credits as a result of his Class-II misconduct conviction. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class-II misconduct convictions.

### C. Retaliation

Plaintiff complains that Defendant Lamp retaliated against him for exercising his protected right to petition government by filing a grievance.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Upon initial review the Court concludes that Plaintiff's allegations are sufficient to state a retaliation claim against Defendant Lamp.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Eighth Amendment and due process claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's retaliation claims against Defendants Lamp remain in the case.

An order consistent with this opinion will be entered.


Dated:   October 16, 2019                /s/ Janet T. Neff
                                                                     Janet T. Neff
                                                                     United States District Judge