UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYRON GLENN, #188376,

    Plaintiff,                                  Hon. Janet T. Neff

v.                                                            Case No. 1:19-cv-803

TANYA LAMP,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendant's Motion for Summary Judgment (ECF No. 20), seeking summary judgment based on both lack of exhaustion and the merits of Plaintiff's retaliation claim. The motion is fully briefed and ready for decision.

Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED IN PART AND DENIED IN PART**.

**I.  Background**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at Carson City Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 against Defendant Tonya Lamp regarding events that occurred when Plaintiff was housed at Lakeland Correctional Facility (LCF). Plaintiff's remaining claim is that Defendant retaliated against him in violation of the First Amendment when Plaintiff worked as an LCF food service worker from April 13, 2016, through November 8, 2016.

Defendant Lamp was employed by Trinity Services Group, Inc., as a Food Service Supervisor at LCF from September 9, 2015, until February 21, 2017. (ECF No. 24-3 at

1

PageID.317.) Defendant Lamp reported directly to Food Service Director Greg Torrey. (*Id.*; ECF No. 31 at PageID.441.) Plaintiff alleges that, during his first week, he asked Defendant Lamp not to scream at him or call him derogatory names. Lamp refused, saying, "Start acting like a man and I will treat you like one; I cannot stand crybabies." (ECF No. 1 at PageID.3.) In spite of Plaintiff's requests that she stop, Defendant Lamp continued to make disparaging remarks to Plaintiff.

Plaintiff alleges that he eventually spoke to Torrey and other personnel at LCF complaining that Lamp had repeatedly passed him over for promotions, despite his superior skill, seniority, and good work reports. Torrey told Plaintiff that Defendant Lamp had worked in food service longer than he had, and therefore, he allowed her to make decisions on promotions. (*Id.* at PageID.3–4.)

In mid-July 2016, Defendant Lamp approached Plaintiff, stating, "You really don[']t know who you are fucking with, but you are going to find out the hard way. I run this kitch[e]n, not Torrey or anybody else you have been crying to." (*Id.* at PageID.4.) Plaintiff claims that he was terminated in August 2016, because on August 15, 2016, Defendant Lamp issued Plaintiff a false work evaluation and requested that the classification director terminate him from his job, ostensibly because Plaintiff had three unexcused work absences. On August 24, 2016, Plaintiff wrote the classification director, claiming that he had not missed three unexcused days of work because he had told Defendant Lamp that he had medical issues on two days, and she had refused to allow him to work on the third day. On August 31, 2016, the classification director informed Plaintiff that he could return to work once he was cleared by medical staff. (*Id.* at 4–5; ECF No. 30-9)

On October 10, 2016, a few days after receiving medical clearance to return to work, Defendant Lamp accused Plaintiff of over-scooping servings and told him to punch out of work pending termination. However, Food Steward Goodman told the corrections officer on duty that

2

Plaintiff only over-scooped a few times at the beginning, and once instructed, he did a good job. Plaintiff was allowed to return to work later that day. Plaintiff filed a grievance against Defendant Lamp on October 11, 2016, regarding the over-scooping issue. (*Id.* at PageID.5; ECF No. 30-2 at PageID.405.)

Plaintiff was promoted to a lead food service job on October 30, 2016. When Plaintiff thanked Defendant Lamp for the promotion and expressed his hope that their differences had been resolved, Defendant Lamp responded, "Trust me I am not the one you need to be thanking. You can thank me when your crybaby snitching ass is fired for good. Trust me it will be soon." Plaintiff asked if she would give him a clean slate if he signed off on this grievance and promised to defer only to her regarding food service matters. However, Defendant Lamp answered, "No, you can ask all the guys, once an inmate decides to front me off by writing grievances and going over my head for petty shit I consider him a rat and he ain[']t got nothing coming from me. . . . What you need to do is sign off of your food service detail before it[']s something worse than that." (ECF No. 1 at PageID.6.)

On December 6, 2016, Defendant Lamp approached Plaintiff and asked where he had been. Plaintiff said that he had been in the restroom. Defendant Lamp demanded that Plaintiff leave work because he was sick, despite Plaintiff stating that he was not sick, but was just using the restroom. Plaintiff told Defendant Lamp that he would be filing another grievance, and Defendant Lamp responded, "[W]e will see what that gets you." (*Id.* at PageID.5–6.)

Plaintiff spoke to Lieutenant Nogueros on December 7, 2016, about Defendant Lamp's continuing harassment and threats. He filed a second grievance against Defendant Lamp the same day. On December 9, 2016, Defendant Lamp pulled a large bag of vegetables out of the toaster on the opposite side of the food service area where Plaintiff was working. Defendant Lamp then

3

approached Plaintiff and ordered him to punch out for stealing. When Plaintiff responded that he did not steal anything, Defendant Lamp stated, "Who do you think the[y]'re going to believe, me or you? . . . Be happy it was[n']t worse than this because you really have pissed me off." Subsequently, Defendant Lamp wrote a false Class II misconduct ticket on Plaintiff, alleging that she saw him remove something from the crotch of his pants and shove it down the toaster. Defendant Lamp claimed that she found a bread bag filled with vegetables and that Plaintiff had stolen the items. (*Id.* at PageID.7–8; ECF No. 30-4 at PageID.413.)

Plaintiff was heard on the misconduct on December 17, 2016. He claimed that he was innocent and asked the hearing officer to review the camera footage, to interview Lt. Nogueros about Defendant Lamp's ongoing threats to have Plaintiff removed from his job, and to interview another kitchen worker about Plaintiff's lack of involvement with the vegetables. The hearing officer refused all the requests and found Plaintiff guilty of theft. Plaintiff appealed the misconduct conviction, but it was affirmed. (ECF No. 1 at PageID.8–9.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.  DISCUSSION

**A.  Failure to Exhaust**

Plaintiff alleges that Defendant Lamp retaliated against him by engaging in the following retaliatory acts: (1) causing him to be terminated by writing a false 363 work report; (2) being told to punch out from work pending termination for "constantly" over-scooping; (3) laying him in (refusing to allow him to work) on December 8, 2016, for using the restroom; and (4) filing a false misconduct against him for theft. Defendant Lamp argues that Plaintiff failed to exhaust his administrative remedies with regard to the first and fourth alleged retaliatory acts.

The Supreme Court has held that a prisoner properly exhausts a claim for purposes of 42 U.S.C. § 1997e(a) by complying with the prison's "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). Because failure to exhaust is an affirmative defense upon which a defendant bears the burden of proof, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), in considering a defendant's motion for summary judgment on exhaustion, the Court must ensure

5

that "no reasonable trier of fact could find other than for [the defendant]." *Calderone*, 799 F.2d at 259. In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218. A prisoner incarcerated with the MDOC must "pursue a grievance through all three steps of the grievance process [set forth in MDOC Policy Directive 03.02.130]." *Weatherspoon v. Strahan*, No. 18-2210, 2019 WL 5306842, at *1 (6th Cir. June 4, 2019).

With regard to the first act of retaliation—the false 363 work report that caused Plaintiff to be terminated—Defendant Lamp contends that Plaintiff failed to file a grievance regarding this issue. (ECF No. 22 at PageID.210.) Plaintiff concedes that he did not file a grievance against Defendant Lamp based on this retaliatory act, but asserts that he did not do so because he "was overwhelmed with his health issues" and was "worried that a grievance would just make things worse."[1] (ECF No. 31 at PageID.447.) Plaintiff cites no case that supports excusing his failure to exhaust under the circumstances Plaintiff describes. Given that Plaintiff had the wherewithal to

---

[1] Defendant Lamp contends that most of Plaintiff's affidavit is inadmissible because it is based on hearsay. She further contends that the Court should disregard it altogether because Plaintiff failed to produce it during discovery. (ECF No. 35 at PageID.476–77.) As for the failure to produce argument, Lamp concedes that Plaintiff prepared the affidavit in January 2021, after the close of discovery and in response to Lamp's motion. It thus makes no sense that Plaintiff could have produced the affidavit during discovery, which concluded on September 1, 2020. (ECF No. 15.) Moreover, Lamp cites no case for the proposition that a plaintiff is required to prepare and produce an affidavit during discovery setting forth the facts to which the plaintiff would testify in response to a yet-to-be-filed motion for summary judgment. Lamp clearly had the opportunity to depose Plaintiff during discovery but failed to do so. Had she deposed Plaintiff, she would have been aware of his version of the facts and could have used the deposition to refute any post-motion affidavit by Plaintiff to the extent it contradicted his prior deposition testimony. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). In any event, I will disregard all portions of Plaintiff's affidavit based on hearsay or that are merely legal conclusions but not exclude the affidavit in its entirety.

send a kite to the classification director on August 24, 2016 (ECF No. 30-9), Plaintiff fails to demonstrate that he lacked the ability to use the grievance process. Plaintiff's argument that he exhausted his administrative remedies by sending a kite complaining about Defendant Lamp to the classification director lacks merit. (ECF No. 30 at PageID.369–72.) While his kite might well satisfy the protected conduct element of a retaliation claim, the issue here is exhaustion, and it is undisputed that Plaintiff did not file a grievance concerning the false 363 work report/termination. Accordingly, I recommend that the Court dismiss this aspect of Plaintiff's retaliation claim without prejudice.

Defendant Lamp next argues that Plaintiff failed to exhaust his claim regarding the false misconduct ticket by filing a grievance. This argument lacks merit. As Plaintiff notes, the MDOC's grievance policy precludes prisoners from grieving decisions made in a Class II or III misconduct hearing and related issues. Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ J(11). Instead, a prisoner must use the appeal process for Class II and Class III decisions set forth in Policy Directive 03.03.105. *Id.* Cases from this and other districts within the Sixth Circuit have recognized that a prisoner must raise a claim of a retaliatory misconduct ticket as a defense in the misconduct hearing and, if unsuccessful, pursue the issue in an appeal. *See Smith v. Goulet*, No. 1:17-cv-618, 2018 WL 3688468 at *2 (W.D. Mich. Aug. 3, 2018) ("Because the ordinary grievance procedure does not apply to disputes arising out of misconduct hearings, the prisoner must instead raise the issue in the misconduct hearing."); *Miller v. Klee*, No. 17-11006, 2018 WL 1354473 at *5 (E.D. Mich. Feb. 23, 2018) (stating that "a prisoner claiming that the issuance of a misconduct ticket constitutes retaliation, must raise that issue during the first misconduct hearing in order to exhaust administrative remedies"); *Alexander v. Ojala*, No. 2:16-cv-85, 2016 WL 6662559, at *3 (W.D. Mich. Sept. 23, 2016), *report and recommendation adopted*, 2016 WL

6659133 (W.D. Mich. Nov. 10, 2016) (concluding that the plaintiff could only exhaust his retaliation claim for minor misconduct ticket by asserting the claim during his misconduct hearing.). Defendant Lamp ignores this requirement and instead incorrectly asserts that Plaintiff was required to raise the issue in a grievance. Thus, Defendant Lamp fails to carry her burden of demonstrating Plaintiff's non-exhaustion of the retaliatory misconduct claim. Moreover, Plaintiff has adequately shown that he raised the issue of retaliation in the misconduct hearing and in his appeal of the misconduct decision. (ECF No. 30-4 at PageID.414.) Accordingly, I recommend that the Court conclude that Defendant Lamp has failed to meet her summary judgment burden on her lack-of-exhaustion defense regarding the misconduct ticket.

**B.    Merits**

The requirements for a valid First Amendment retaliation claim are well established. A plaintiff must establish that: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendant Lamp does not dispute that Plaintiff engaged in protected conduct by complaining to Food Service Director Torrey about her failure to promote him, by kiting the classification director about being terminated by Defendant Lamp for missing three days due to his painful back, and by filing grievances. However, Defendant Lamp contends that Plaintiff fails to establish the second and third elements of his claim as to some or all of the alleged retaliatory acts.

### A. Over-scooping and Restroom Incidents

Defendant Lamp argues that the October 10, 2016 incident, in which she instructed Plaintiff to punch out for over-scooping food but Plaintiff was allowed to return to work later that day without incident, and the December 6, 2016 incident, in which she ordered Plaintiff to punch out because he was out of place/too sick to work, do not amount to adverse action because they were *de minimis* in nature. Lamp further contends that Plaintiff cannot establish the necessary causal connection requirement because Trinity employees at LCF are not informed they are the subject of prisoner grievances.

An action is adverse if it would deter a person of ordinary firmness from engaging in that conduct. *See Thaddeus-X*, 175 F.3d at 394. As an initial matter, Defendant Lamp's argument that the October 10, 2016 and December 6, 2016 actions cannot be considered adverse because Plaintiff continued to file grievances and appeal misconduct tickets is misplaced. The inquiry is not whether Plaintiff himself was deterred, but whether a person of ordinary firmness would be deterred by the adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) ("[W]e totally reject the argument that the later filing of complaints or grievances against challenged action demonstrates that the challenged action was not sufficiently adverse to constitute adverse action.").

Still, "some adverse actions are so de minimis that they do not rise to the level of a constitutionally cognizable injury." *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018) (citing *Thaddeus-X*, 175 F.3d at 396). A sufficient injury is required because "it would certainly trivialize the First Amendment to hold that harassment for exercising one's constitutional rights was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) (internal quotation marks, brackets, and ellipsis omitted). The deterrent effect "need not be great in order to be actionable," *Thaddeus-X*, 175 F.3d at 397, and "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's

9

claim should go to the jury." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citing Thaddeus-X, 175 F.3d at 398).

Defendant Lamp contends that the actions she took against Plaintiff on October 10, 2016 and December 6, 2016 are too inconsequential to deter a person of ordinary firmness from continuing to engage in protected conduct. Regarding the October 10, 2016 incident, Lamp notes that Plaintiff was earning $0.235 per hour at his job and would have lost, at most, $1.88 for the entire workday, although by his own admission, Plaintiff was allowed to return to work later that day and therefore lost less than $1.88 that day. As for the December 6, 2016 incident, Defendant Lamp notes that Plaintiff was then earning $0.325 per hour (due to a raise) and would have lost only $2.60 as a result of missing the entire day of work. (ECF No. 24-2 at PageID.239.) Defendant Lamp cites *Ingram v. Jewell*, 94 F. App'x 271 (6th Cir. 2004), as supporting her contention that refusing to allow Plaintiff to work on both days resulted in a *de minimis* injury. In *Ingram*, the court held that the $3.00 cost of an extension cord imposed on the plaintiff was insufficient to deter a person of ordinary firmness from engaging in protected activity. *Id.* at 273.

Plaintiff argues that the Court should reject Defendant Lamp's argument for two reasons. First, he argues that his grievances were not *de minimis*, or frivolous, but this argument confuses the issue of whether a grievance was frivolous with whether a particular alleged adverse action was *de minimis*. (ECF No. 30 at PageID.356 ("Thus the grievance was not deminimus [sic] as the Def. claims."), 359-60 (asserting that the December 2016 was not frivolous and citing *Maben* for the proposition that Plaintiff's grievance raised a legitimate issue about Defendant interfering with Plaintiff's ability to complain to her supervisor).) This argument is thus misplaced. Plaintiff also argues that the overscooping and restroom incidents resulted in adverse actions because overscooping a food item is considered a theft misconduct for which Plaintiff could have been

10

terminated from his position, and it was foreseeable that Plaintiff would have been falsely charged for a misconduct. (*Id.* at PageID.354–55.) Similarly, with regard to the restroom incident, Plaintiff contends that being out of place is punishable as a Class II misconduct, and if he had been found guilty of a misconduct, he would have been terminated from his food service detail.

Plaintiff cites *Maben* in support of these arguments, but his reasoning is based on facts that are one step removed from those involved in *Maben*. The plaintiff in *Maben* had *actually* been issued a misconduct ticket, and the court said that in such situation, it was appropriate to "look to both the punishment Maben could have faced and the punishment he ultimately did face." 887 F.3d at 266. Here, Plaintiff has presented no evidence that he was issued a misconduct ticket for either incident. His speculation about the sanctions he could have faced had he been issued a misconduct ticket is irrelevant, as Plaintiff has not presented any evidence that Defendant Lamp even *threatened* to write him misconduct tickets for these incidents.

As for whether these incidents are sufficiently adverse that they amount to more than *de minimis* injury, I conclude that they are not. The Sixth Circuit has indicated in various unpublished decisions, and district courts have held, that termination of prison employment in retaliation for filing non-frivolous grievances can constitute adverse action. *See Walton v. Gray*, 695 F. App'x 144 (6th Cir. 2017) ("This court has indicated that loss of a prison job can constitute an adverse action for retaliation purposes." (citing, among others, *Siggers-El*, 412 F.3d at 702)); *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (observing that a threat to move the plaintiff out of his unit so that the would lose his job was capable of deterring a person of ordinary firmness from exercising protected rights); *Walker v. Brewer*, No. 13-CV-349, 2014 WL 1117835, at *2 (W.D. Mich. Mar. 20, 2014) (concluding that a loss of a high-paying job leaving the plaintiff without any means to receive income was not simply *de minimis*). Here, Plaintiff did not lose his

11

job, but was precluded from working for only one day or part of a day. Plaintiff has cited no case supporting the contention that temporary suspension or "lay in" from a prison job constitutes an adverse action.

In addition, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added). With regard to whether the law was clearly established, the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, — U.S. —, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "'[C]learly established law' may not be defined at such 'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* (quoting *White*, 137 S. Ct. at 552). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019). As noted above, while the law at the time of the alleged events was clearly established that termination from a prison job could constitute an non-*de minimis* adverse action for purposes of a First Amendment retaliation claim, Plaintiff has cited no case, and I have found none through my own research, that would have put a reasonable government official on notice that loss of a day's or a partial day's pay from a prison job was more than *de minimis* injury. Therefore, Defendant

Lamp is entitled to qualified immunity with regard to the October 10, 2016 and December 6, 2016 incidents.

### B. False Misconduct Ticket

Regarding the December 8, 2016 misconduct report, Defendant Lamp does not dispute that Plaintiff was thereby subjected to legally-sufficient adverse action. Instead, she argues that Plaintiff's claim fails on the issue of causation.

The Sixth Circuit has held:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X*, 175 F.3d at 399.

To support her motion, Defendant Lamp submits an affidavit in which she states that, at the time she discovered the vegetables hidden in the kitchen, she had a reasonable belief that Plaintiff had stolen them and would have issued Plaintiff the misconduct even in the absence of his past grievances and other protected conduct. (ECF No. 24-3 at PageID.319.) She further asserts that she did not write a false misconduct report on Plaintiff. (*Id.*) Defendant Lamp notes that the hearing officer found her to be credible and, therefore, found Plaintiff guilty of theft. (ECF No. 22 at PageID.206.)

Plaintiff argues in response that, during the hearing, he maintained his innocence and argued that Defendant Lamp wrote the misconduct in retaliation for Plaintiff's prior grievances and complaints. Plaintiff further notes that the hearing officer rejected his requests to review the video from the surveillance camera and to interview a staff member and a prisoner who was working in the prison, which rendered the hearing unfair. (ECF No. 30 at PageID.365–68.) Whether Plaintiff received a fair hearing is not necessarily germane to whether a genuine issue of

13

material fact remains as to whether Defendant Lamp acted with a retaliatory motive in writing the misconduct.[2]

Nonetheless, I conclude that Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Defendant Lamp retaliated against Plaintiff. Defendant Lamp stated in her misconduct report that she observed Plaintiff grab something from the crotch of this pants and shove it into a toaster stored under the serving line. She reported that, upon inspecting the toaster, she found a bread bag filled with ten vegetables. (ECF No. 30-4 at PageID.413.) Plaintiff submits with his response an affidavit from prisoner Michael Young, who states that he worked in food service at LCF and was present when Defendant Lamp claims to have discovered the vegetables. Young states that, as he was cleaning the serving line, he discovered the bag of vegetables in the toaster. He states that he was afraid to touch the bag and feared that if Defendant Lamp found it, she would blame it on him. Young immediately told Lamp, who told him to leave the bag alone, and she would get it in a minute. Between ten to fifteen minutes later, Defendant Lamp pulled the bag of vegetables from the toaster, walked over to Plaintiff, and told him to punch out for stealing. When Young later questioned Defendant Lamp about whether she was really sure Plaintiff was the one who put the vegetables in the toaster, she told him to "[s]tay out of it . . . [because] the stuff was on your side. I can put you in it too." (ECF No. 30-7 at PageID.426–27.) Plaintiff also presents an affidavit from prisoner Willy Garcia, who states that he overheard Defendant Lamp complain to a co-worker in September 2016 about the classification department allowing Plaintiff to return to his job and stating that she would have to find "another way to get

---

[2] Plaintiff argues that, due to the hearing officer's refusal to allow him to present his defense, he is not precluded in this case from challenging the factual findings of the misconduct hearing. While Plaintiff is correct, Defendant Lamp has not asserted that the hearing officer's factual findings are entitled to preclusive effect under *Peterson v. Johnson*, 714 F.3d 905, 911–13 (6th Cir. 2013). Thus, the Court need not concern itself with the preclusive effect of the hearing officer's findings.

14

rid of [Plaintiff's] ass." (*Id.* at PageID.423.) Finally, Plaintiff asserts that Defendant Lamp told him that she had nothing to do with his promotion and that Plaintiff was sure to be fired soon. (ECF No. 31 at PageID.452.) In light of this evidence, a reasonable jury could find that Defendant Lamp was motivated by unlawful retaliation in writing the misconduct ticket.[3]

Accordingly, I recommend that the Court deny Defendant Lamp's motion with regard to the false misconduct ticket.

### C. Punitive Damages

Defendant Lamp moves the Court to dismiss Plaintiff's claims for punitive damages. Punitive damages are available in a Section 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *See King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015). The evidence thus far submitted, interpreted in Plaintiff's favor, is sufficient for a reasonable jury to conclude that Defendant acted recklessly or with callous indifference to Plaintiff's constitutional rights. Accordingly, this argument is rejected.

### D. Qualified Immunity

Finally, Defendant Lamp argues that she is entitled to qualified immunity on Plaintiff's claim. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982). An "objective legal reasonableness"

---

[3] Defendant Lamp claims that *White-Bey v. Griggs*, 43 F. App'x 792 (6th Cir. 2002), is "instructive" in this case, but I conclude otherwise. The court in *White-Bey* noted that the plaintiff conceded that he engaged in the conduct charged in the misconduct report. Moreover, the court noted that the Plaintiff presented no evidence that the misconduct was causally connected to his earlier grievances. *Id.* at 794. Neither circumstance is present in this case.

test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236.

As discussed above, an issue of fact remains as to whether Defendant Lamp wrote a false retaliatory misconduct ticket against Plaintiff. Because the law is clearly established that a prison official may not retaliate against a prisoner for engaging in protected conduct, *see Maben*, 887 F.3d at 269, Defendant Lamp is not entitled to qualified immunity.

### III.  Conclusion

For the foregoing reasons, I recommend that Defendant's motion be **granted in part and denied in part**. In particular, I recommend that: the portion of Plaintiff's retaliation claim based on the termination resulting from the false 363 work report be dismissed **without prejudice** for lack of exhaustion; the portion of the retaliation claim based on the overscooping and bathroom incidents be dismissed **with prejudice**; and the motion be denied with regard to the alleged false misconduct ticket.

Dated: June 28, 2021                                             /s/ Sally J. Berens
                                                                               SALLY J. BERENS
                                                                               U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).